1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

LESLIE H.,

7

Plaintiff,

8

v.

9

ACTING COMMISSIONER OF SOCIAL
SECURITY,

10

Defendant.

Case No. 3:24-cv-05559-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13

defendant's denial of plaintiff's application for disability insurance benefits ("DIB").

14

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule

15

MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 4.

16

Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 1,

17

Complaint.

18

On July 8, 2014, plaintiff filed an application for DIB alleging a disability onset

19

date of February 1, 2013. AR 208-09. The application was denied initially and upon

20

reconsideration. 105-07, 109-110. On September 12, 2016, a hearing was conducted by

21

ALJ Kimberly Boyce. AR 38-73. On November 7, 2016, ALJ Boyce issued an

22

unfavorable decision finding plaintiff not to be disabled. AR16-37. The Appeals Council

23

("AC") declined the request for review and plaintiff initiated a civil action. AR 2-7.

24

25

1

On December 3, 2018, the Honorable David W. Christel issued an order affirming the ALJ's 2016 decision. 905-21. On appeal, the Ninth Circuit granted defendant's unopposed motion to vacate the judgment and remand. AR 904-06.

While the appeal was pending, on February 5, 2018, plaintiff filed a second application for DIB alleging a disability onset date of November 8, 2016. AR 1273-74. The second application was denied initially and upon reconsideration. AR 1176-1183, 1186-92. On July 9, 2019, a second hearing was held in front of ALJ Glenn G. Meyers. AR 1039-74. On July 31, 2019, ALJ Meyers issued a partially favorable opinion, finding plaintiff to be disabled since May 23, 2019 (plaintiff's 55th birthday), but not before that date. AR 854-83, The AC denied the request for review and plaintiff initiated a civil action. AR 884-89. On September 21, 2021, the undersigned issued an order affirming ALJ Meyers' decision. AR 925-34. On appeal, the Ninth Circuit granted the parties' joint motion to vacate and remand. AR 922-24.

On May 16, 2023, a new hearing was held before ALJ Meyers on the issue of disability prior to May 23, 2019. AR 752, 783-812. On March 13, 2024, ALJ Meyers issued an opinion finding plaintiff not to be disabled prior to May 23, 2019. AR 748-82. The AC declined the request for review and plaintiff filed this appeal.

The ALJ determined from July 31, 2013, through May 22, 2019, plaintiff had the following severe impairments: osteoarthritis in bilateral hands; inflammatory bowel disease; thyroid disorder; adult onset fluency disorder (stutter); depressive disorder; anxiety disorder. AR 754. As a result, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with the following additional restrictions:

frequent reaching, handling, and fingering; occasional stooping and crouching; no crawling, kneeling, or climbing ramps, stairs, ropes, ladders, scaffolds; occasional talking in the workplace; no work at heights or in proximity to hazardous conditions; proximity to a bathroom at work; able to understand, remember, and carry out simple instructions and tasks; able to use judgement to make simple work-related decisions; can deal with only rare changes in the work setting.

AR 758. The ALJ determined that plaintiff could perform the requirements of representative occupations such as: Marker (light; unskilled SVP 2), DOT 209.587-034, Cleaner, Housekeeping (light; unskilled SVP 2), DOT 323.687-014, Mail Clerk (light; unskilled SVP 2), DOT 209.687-026, Router (light; unskilled SVP 2), 222.587-038, and Routing Clerk (light; unskilled SVP 2), DOT 222.687-022. AR 773.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

**1. Medical evidence**

Plaintiff challenges the ALJ's assessment of medical opinions of Dr. Mark Heilbrunn, M.D., Dr. William L. Chalstrom, Ph.D., Mr. Eliyahu Andrew Stahl, L.Ac., Dr. Anna Colombini, ND, and Dr. Corina B. Going. Dkt. 14 at 3-13.

a. Acceptable medical sources

Plaintiff filed their application[s] before March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). But "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001)

(*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

- Dr. Mark Heilbrunn, M.D., examining physician

On October 6, 2014, Dr. Heilbrunn completed a disability evaluation of plaintiff. AR 427-32. He diagnosed her with history of hypothyroidism, increased fatigue, history of irritable bowel syndrome, underweight, bilateral resting hand tremor, and minimal bilateral hand osteoarthritis. AR 431. He opined that plaintiff has a lifting capacity of 11-20 pounds frequently, the examination revealed no limitation in sitting, standing, or walking, but she is limited in standing/walking due to fatigue and abdominal pain. AR 432. Dr. Heilbrunn stated that plaintiff rated abdominal pain as 5/10, and she had to use the bathroom twice during the examination. AR 427, 429.

He opined normal hand coordination bilaterally, frequent to continuous handling, fingering, feeling, pushing/pulling. *Id*. She could climb stairs and ramps, ladders, or scaffolding on a frequent basis, no limitations in balancing, stooping, crouching, kneeling, or crawling. *Id*. He opined no communicative, hearing, or corrective visual limitations, no environmental limitations to humidity or wetness, she should not be exposed to dust, odors, fumes, or extreme cold, no noise intolerances. *Id*. She could tolerate exposure to unprotected heights and moving mechanical parts, she could operate a moving vehicle. *Id*. She could perform activities of light shopping, individual

1    travel, use public transportation, prepare specific food, feed herself, and care for

2    personal hygiene. *Id*.

3         Dr. Heilbrunn stated: "There are no specific physical impairments within the

4    examination. Her overall problems are abdominal pain, gastric distress, history of

5    hypothyroidism, and increased fatigue." AR 432. He concluded by stating that

6    "claimant's conditions will not necessarily impose limitations for 12 months continuous."

7    AR 433. He recommended a psychological examination of plaintiff. *Id*.

8         The ALJ assigned some/partial weight to Dr. Heilbrunn's opinion on the basis

9    that the examination findings were consistent with marginal limitations in sitting,

10   standing, walking, postural abilities, and manipulative limitations, but the ALJ gave no

11   weight to the vague assessment of limitations due to fatigue and abdominal pain. AR

12   767. The ALJ found this conclusion inconsistent with treatment records that show

13   plaintiff stopped most medication for her impairments approximate to her alleged onset

14   date and pursued alternative methods of treatment, after which she reported improved

15   fatigue and GI issues. AR 767. The ALJ stated plaintiff has maintained normal levels of

16   thyroid hormones with supplemental therapy, she has displayed a lack of tenderness in

17   her abdomen, and she has gained weight since Dr. Heilbrunn's assessment. *Id*.

18        Plaintiff argues that the evidence cited by the ALJ does not show sustained

19   improvement and asserts that Dr. Heilbrunn's clinical findings support plaintiff's

20   testimony about the effects of her fatigue and irritable bowel syndrome. Plaintiff also

21   asserts the ALJ erred by not including symptoms and limitations from chronic fatigue

22   syndrome and did not provide reasoning for omitting chronic fatigue syndrome from the

23

24

25

1  list of plaintiff's severe impairments, even though a severe impairment of chronic fatigue

2  syndrome was included in the ALJ's previous decision. Dkt. 14 at 4.

3    A finding that a medical opinion does not contain specific functional limitations or

4  is otherwise too vague to be useful in making a disability determination, can serve as a

5  legitimate reason for discounting that opinion. *See Meanel v. Apfel*, 172 F.3d 1111,

6  1114 (9th Cir. 1999) (holding that statement that the plaintiff would have "decreased

7  concentration skills" was too vague to be useful in the disability determination).

8    Here Dr. Heilbrunn opined "she is limited in all activities, including

9  standing/walking because of fatigue and abdominal pain." AR 432. The ALJ did not err

10  in describing this limitation as vague -- Dr. Heilbrunn did not explain to what degree

11  these symptoms limited her activities. Moreover, Dr. Heilbrunn observed that plaintiff's

12  conditions would not *necessarily* continuously cause limitations for 12 months, and this

13  is also a vague assessment. AR 433. Because it is a vague opinion, it is difficult to

14  assess whether it is contradicted by another physician's opinion.

15    Plaintiff also argues that the ALJ erred in finding chronic fatigue syndrome (CFS)

16  to be a severe impairment in the previous decision but not in the current decision. Dkt.

17  14 at 3. Plaintiff does not argue that Dr. Heilbrunn diagnosed her with chronic fatigue

18  syndrome, but argues "in his previous decision, the ALJ found that [plaintiff] had the

19  severe impairment of chronic fatigue syndrome, but in his current decision, the ALJ

20  failed to accept that [plaintiff] has this impairment, and the ALJ did not explain why he

21  changed his finding on this issue." Dkt. 14 at 4.

22    The ALJ explained that he determined CFS was not a medically determinable

23  impairment because the records did not contain the necessary criteria for a diagnosis

24

25

for CFS as it has not been diagnosed by an acceptable medical source and treatment record did not document the medical signs outlined in Social Security Ruling (SSR) 14-1p. AR 755.

As SSR 14-1p explains, a finding that a person has a medically determinable impairment (MDI) of CFS requires "a licensed physician diagnosed CFS, and this diagnosis is not inconsistent with other evidence in the person's case record." The prior decision in this case was vacated and remanded (on a stipulated motion of the parties) by the Ninth Circuit Court of Appeals (AR 924) and plaintiff does not point to any authority to support the contention that the ALJ erred by changing the decision on whether chronic fatigue syndrome met the criteria for a medically determinable impairment. *See Marilyn P. v. Comm'r of Soc. Sec.*, C19-5703-MLP, 2021 WL 977713, at *2 (W.D. Wash. Mar. 16, 2021), *aff'd sub nom. Price v. Kijakazi*, 21-35377, 2022 WL 1153930 (9th Cir. Apr. 19, 2022).

The ALJ had at least one valid reason – vagueness -- supported by substantial evidence, to discount the opinion of Dr. Heilbrunn. Plaintiff has failed to show the ALJ harmfully erred. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error).

- Dr. William L. Chalstrom, Ph.D., examining clinical psychologist

On October 2, 2014, Dr. Chalstrom conducted a psychological examination of plaintiff, titled, "Psychological Memory Assessment". AR 417-21. He completed a medical source statement and concluded that plaintiff had an adjustment disorder with

anxiety; plaintiff is capable of understanding, remembering, and carrying out both short and simple instructions and more complex ones. AR 420-421.

Her concentration and memory were good, it appeared she would be able to get along with others in a work situation. AR 421. He noted she has been feeling anxious about work which exacerbates her sadness and tearfulness related to PMDD. *Id*. He also noted that plaintiff indicated she would not be able to maintain attention and concentration due to fatigue which is severe after three hours. *Id*.

The ALJ gave some/partial weight to this opinion but discredited plaintiff's self-reported inability to maintain attention and concentration due to her ongoing ability to maintain memory and concentration required for at least unskilled and repetitive work. AR 771.

Plaintiff argues that the ALJ erred in this conclusion because the assessment supports plaintiff's testimony about her limitations. Dkt. 14 at 5.

As discussed below, the ALJ properly discredited plaintiff's statements regarding her attention and concentration. The ALJ therefore did not err in discrediting the portions of Dr. Chalstrom's opinion that relied on this testimony.

b.  Non-acceptable medical evidence

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). And where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting

similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694* (9th Cir. 2009).

In rejecting non-acceptable medical testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link [their] determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

- Mr. Eliyahu Andrew Stahl, L.Ac.

In an undated note, plaintiff's acupuncturist stated that he treated plaintiff for IBS/Gastro distress, fatigue, insomnia, premenstrual dysphoric DO, and depression, 41 times between 10/24/2013 and 8/4/2013, approximately once a week. AR 325. He opined that her digestion has improved and at time her fatigue is reduced; she is particularly labile and dysfunctional the two weeks before her menstrual cycle. *Id*. He opined that based on this it would be very difficult for her to function in her normal job capacity. *Id*.

The ALJ did not evaluate this opinion. Plaintiff argues that this was harmful legal error. Dkt. 14 at 5. However, Mr. Stahl did not opine any functional limitations. Any error in the failure to evaluate this opinion would be harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (An error that is inconsequential to the non-disability determination is harmless).

1          • Dr. Anna Colombini, ND, treating provider

2          Dr. Colombini[1] wrote in an undated note that she treated plaintiff between August

3   5, 2013, and August 6, 2014. AR 374. She assessed that plaintiff could work no more

4   than 20 hours a week with a gradual increase in work duty due to being overwhelmed

5   and fatigued. *Id*. In July 2014, Dr. Colombini stated that plaintiff was unable to work due

6   to marked, and extreme, limitations from mental health conditions and symptoms. AR

7   2091-2093. She opined that plaintiff would be completely unable to work because of

8   extreme limitations regarding: ability to perform activities within a schedule, maintain

9   regular attendance, and be punctual within customary tolerances (AR 2089); ability to

10  complete a normal workday without interruptions from psychologically based symptoms,

11  ability to perform at a consistent pace with a standard number and length of rest

12  periods; and plaintiff would have four absences from work in an average month. AR

13  2090.

14         On April 20, 2015, she opined that plaintiff was unable to work based on her

15  diagnoses of fatigue, irritable bowel syndrome, gastrointestinal distress, and dysbiosis.

16  AR 466. She noted that the stress from work greatly affects progress made in her

17  health. *Id*.

18         On June 30, 2015, Dr. Colombini completed a residual functional capacity

19  questionnaire wherein she opined that plaintiff's symptoms associated with her

20  impairments were "constantly" severe enough to interfere with the attention and

21  concentration required to perform simple work-related tasks. AR 475. She opined

22

23  ─────────────────────
    [1] See RCW Chapter 18.36A, WAC 246-836-020, 246-836-110, concerning the qualifications needed under
24  Washington state law to obtain a license to practice as a naturopathic physician in Washington.

25

plaintiff would need to lie down or recline more frequently than typical breaks in an eight-hour workday. *Id*. She could walk 10-12 city blocks and then needs to rest for one to three hours, she could sit seven hours in an eight-hour workday and could stand/walk for one hour. *Id*. Every 15-20 minutes she would need a 20-30-minute break one to two times per day, she would need to sleep for one to three hours. *Id*. She opined plaintiff can lift up to 20 pounds occasionally and could never lift 50 pounds. *Id*.

Dr. Colombini opined that plaintiff had significant limitations in reaching, five percent of the day, and opined plaintiff could grasp, turn and twist for 20 percent of the day and use fingers for fine manipulation 75 percent of the day. *Id*. She opined plaintiff would be absent from work due to her impairments or treatments more than four times a month. AR 476.

On July 13, 2016, she opined similar limitations. AR 616-17. On August 27, 2018, she opined that plaintiff would be unable to perform more than 20 hours of work a week, she would be unable to perform repetitive lifting of greater than 10-20 pounds, and she was easily fatigued with repetitive physical activity that requires lifting or strenuous physical activity. AR 1749.

The ALJ gave minimal weight to Dr. Colombini's assessments because she did not refer to any evidence to support her assessments and appears to have no evidentiary basis for her assessments beside plaintiff's own complaints, which the ALJ discounted. AR 768. The ALJ also determined that the assessment was inconsistent with the treatment record. AR 768.

Plaintiff argues that the ALJ failed to acknowledge that under SSR 06-3p, the medical opinions of other source statements can sometimes be entitled to more weight

than the opinions of acceptable medical sources, the ALJ failed to identify any medical

evidence that is inconsistent with the opinions, and the treatment records are consistent

with Dr. Colombini's opinions regarding this level of severity. Dkt. 14 at 10-11.

Here, the ALJ considered the treatment record and found Dr. Colombini's

evaluations from 2015 and 2016 were inconsistent with other medical evidence. AR

768. This is a germane reason, supported by substantial evidence, as to

musculoskeletal symptoms and limitations. Other evidence showed far less frequent or

severe symptoms and limitations, with respect to plaintiff's knee, wrist, and back pain.

See, notes from physical therapy during January through September 2017 (showing her

musculoskeletal symptoms were improving with physical therapy exercise). AR 1475-

1506.

Evidence from Dr. Colombini concerning plaintiff's symptoms and limitations

relating to irritable bowel syndrome was consistent with the medical records from

February through April 2013 concerning frequent diarrhea symptoms. AR 631-644, 688,

697, 710-713.  The opinions of Dr. Colombini are consistent with other opinions

concerning gastrointestinal symptoms, e.g., Dr. Heilbrunn's evaluation discussed above,

Dr. Going's assessments of June 2015 and July 2016, AR 468-469, AR 626-627, and

Dr. Darren Schwartz, MD's notes of an evaluation for gastrointestinal conditions on 7-

27-2017, AR 1953-1955, 2028 (documenting a 2017 examination, colonoscopy findings

on 8-31-2017, documenting diverticulitis and a polyp, and reviewing the records of

treatment starting in 2013 for colitis). Neither Dr. Platter's assessment (AR 978-981) of

6-27-2018, nor Dr. Fitterer's review (AR 996-999) of 9-26-2018, discuss IBS to any

extent, except for a statement that plaintiff would need more than routine breaks or

access to a bathroom because of unpredictable symptoms of IBS, and these non-examining physicians therefore did not provide opinions inconsistent with Dr. Colombini's opinions, regarding IBS.

The record does not show evidence regarding plaintiff's gastrointestinal symptoms and work-related limitations, for example symptoms such as explosive bowel problems and fatigue due to IBS, that would contradict Dr. Colombini's or Dr. Going's opinions. Therefore, the reasons for disregarding Dr. Colombini's opinions regarding irritable bowel syndrome were not arguably germane.

- Dr. Corina B. Going, ND, treating provider.

On June 24, 2015, Dr. Going completed a residual functional capacity questionnaire and opined that plaintiff's chronic fatigue and related symptoms would be constantly severe enough to interfere with attention and concentration required to perform simple work-related tasks. AR 468. She opined plaintiff would need to lie down or recline in excess of typical breaks during a typical workday. *Id*. She opined plaintiff could walk 10-12 city blocks, she could sit two hours in an eight-hour workday and could stand/walk one hour. *Id*. She opined plaintiff would need to take unscheduled breaks every day for one to three hours. *Id*. She could occasionally lift up to 20 pounds, could never lift 50 pounds. *Id*. She would be absent from work because of her impairments or treatments more than four times a month. AR 469.

On July 25, 2016, Dr. Going completed a second residual functional capacity questionnaire and opined that plaintiff's irritable bowel syndrome, and chronic fatigue, would constantly be severe enough to interfere with the attention and concentration required to perform simple work-related tasks. AR 626. She would need to recline or lay

down more frequently than typical breaks; she could walk 10 city blocks once per day

without rest or significant pain; she could occasionally lift up to 20 pounds, could never

lift 50 pounds. AR 626-627. She would be absent more than four times a month due to

her impairments. AR 627.

In progress notes dated 7-19 and 7-25-2016, Dr. Going stated that plaintiff had

been vomiting one to two times each week, and experienced explosive diarrhea

episodes up to 15 times per day. AR 619. This caused her to feel extremely fatigued.

AR 619-620.

On March 6, 2018, Dr. Going completed a third residual functional capacity

questionnaire and opined plaintiff could walk three city blocks without rest or significant

pain; she can sit four hours and stand/walk one hour in an eight-hour workday. AR

1653. She would need to take unscheduled breaks every 15-30 minutes for between ten

minutes and two hours. *Id*. She could occasionally lift 10 pounds; she could grasp, turn,

and twist objects with her hands 10 percent of the time, fine manipulation of her fingers

20 percent of the time, reaching with her arms 20 percent of the time. *Id*. She would be

absent more than four times a month due to her impairments. AR 1654. Dr. Going

assessed that plaintiff's symptoms would frequently be severe enough to interfere with

attention and concentration that is required to perform simple work-related tasks. AR

1653.

Progress notes from Dr. Going document that in 2017, plaintiff's vomiting and

diarrhea symptoms improved. AR 1632-1643.

The ALJ gave minimal weight to Dr. Going's assessments except as to the

manipulative limitations and the ability to lift 20 pounds. AR 768. The ALJ discounted

her opinion as being from a non-acceptable medical source and noted that she did not refer to any evidence to support her assessments, her treatment records did not include any examination findings, the opinion was inconsistent with plaintiff's examination findings since her onset date, as well as her conservative course of treatment. AR 768.

As with the evidence from Ms. Colombini, other evidence showed far less frequent or severe symptoms and limitations as to the musculoskeletal conditions, than those opined by Dr. Going. For example, notes from physical therapy during January through September 2017 show her back, wrist, and knee pain symptoms were improving with physical therapy exercise. AR 1475-1506. In rejecting non-acceptable medical testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

The reasons given in this case for discounting Ms. Going's opinions about knee, wrist, and back pain were arguably germane, and are supported by substantial evidence.

The record does not show evidence regarding plaintiff's gastrointestinal symptoms, and fatigue associated with IBS, that would contradict Dr. Colombini's or Dr. Going's opinions. Therefore, the ALJ erred because the reasons were not arguably germane, and were not supported by substantial evidence, as to the irritable bowel syndrome and fatigue connected with that condition.

### c. Plaintiff's statements regarding symptoms and limitations

Plaintiff challenges the ALJ's assessment of her testimony. Dkt. 14 at 13-16.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).   In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)). The Court's job is not to reconsider the evidence, but to determine whether the ALJ's interpretation of that evidence was reasonable. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Plaintiff testified at three hearings – September 12, 2016 (AR 47-67), July 9, 2019 (AR 1045-1065), and May 16, 2023 (AR 791-804). As to the period in question for the current appeal, July 31, 2013, through May 22, 2019, the ALJ observed that plaintiff's testimony from the first two hearings would be closer-in-time to the relevant period, and she had stated during the 2023 hearing that her memory for what had

happened in the past was somewhat impaired. AR 759. In the 2023 hearing, plaintiff

testified that her conditions had impacted her memory and she tends to be forgetful, get

confused, and repeat questions. AR 793.

The ALJ discussed the testimony and statements made by plaintiff. AR 758-765.

Plaintiff testified she first stopped working because she was having a lot of diarrhea,

losing weight, sleeping a lot, tired a lot, having trouble focusing, and a lot of issues with

pain. AR 53, 63, 792. She could stand 15-30 minutes at any one time before she would

need to get off her feet. AR 57. Plaintiff stated that she could sit for 30-60 minutes at a

time before she would need to get up and take a break; the break would be 15-20

minutes but sometimes two to three hours. AR 58.

During the July 2019 hearing, plaintiff stated that she could walk a mile and a

half, but not consistently. AR 1050. She testified that her hands were shaking because

she had central tremors, and that she had a stutter (that started in July 2018) every day;

she said the stutter became worse when the tremors are bad and when she felt tired.

AR 1052-1053. Tremors prevented her from being able to type on a keyboard. AR 1064.

When asked by her attorney whether she would be able to sustain a job for eight-hours

per day and a full five-day work week, she said that would not be possible. AR 1062-

1063.

Plaintiff testified that she needed to lay down for four two six hours during the

daytime. AR 58. She could lift about 10 pounds. AR 58. She stated that in February

through April of 2013, she was given an IBS diagnosis, which explained the

gastrointestinal issues, and because of the IBS she lost a lot of weight. AR 60-61, 67.

She testified that she attempted to go back to work in January 2014, also August through October 2014, and although accommodations were provided such as an office closer to home, less job duties, and driving to work with a friend, she was forgetting passwords and calling the help desk daily, she was tired or having chronic diarrhea or vomiting within a few hours of going to work, and she was having trouble staying awake. AR 65-66, 794. She tried to go back one more time after this period but was unable to complete a single full-time eight-hour day. AR 795.

When cooking, she would have trouble following simple recipes and would leave burners on. AR 796. In 2015 she was spending 15-20 hours a day in bed and later she could go without napping but could not be productive for a full day without getting fatigued. AR 796-97. She experienced joint pain that is worse with exercise, she had tremors in her hands that made it hard to write, grip, use a computer, and caused her to drop things. AR 797-98. She experienced depression about her situation which was helped by counseling. AR 798. She could do some housework like vacuuming and laundry but needed to take breaks but her brother or husband would carry the vacuum up the stairs for her. *Id*. She would have to rest for 15-20 minutes while vacuuming. AR 799.

She stated that needing to use the restroom has at times, been a daily problem and there were times she could not make it to the restroom. *Id*. She testified that food would go through her, sometimes she had diarrhea up to 15 times a day. *Id*. She had trouble pouring water for herself due to tremors. AR 800. She testified that her conditions have improved since onset, but they fluctuated, and there were days her symptoms were worse than others. AR 801.

The ALJ found that the medically determinable impairments could reasonably be expected to produce the alleged symptoms, however statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 759.

The ALJ found that the medical record reflected minimal gastrointestinal (GI) issues, there was partial improvement in these symptoms, she ceased medication for these issues but gained weight, and recent treatment records contradict her testimony. AR 760.

As to her hand osteoarthritis he determined that even with minimal treatment, she displayed normal functioning in her hands and joints. AR 761. He determined that the records document stable and generally normal levels of thyroid hormones. *Id*.

The ALJ summarized the record and concluded that plaintiff's other physical limitations were inconsistent with normal examinations and objective findings. AR 761-62. As to plaintiff's mental limitations, the ALJ determined that plaintiff had a history of anxiety and depression but her reports of severe mental limitations were inconsistent with her examination findings, her lack of psychiatric care, and her mental health counseling. AR 762.

Plaintiff raises several arguments related to chronic fatigue syndrome and states that the ALJ erred in failing to assess this condition under SSR 14-1p. Dkt. 14 at 14-16. But as discussed above, plaintiff does not point to any evidence that establishes that plaintiff's CFS was an MDI (this fatigue is to be distinguished from the more general allegations of fatigue that are alleged to have been connect to IBS). Therefore, these arguments fail to establish error.

The ALJ also provided a clear and convincing reason regarding the *post-2016* portion of the relevant period for discounting plaintiff's testimony based on contradiction with the medical record as to IBS and related fatigue. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164. The ALJ is required to show their work and make findings to allow the reviewing court to determine the ALJ did not "arbitrarily discredit" plaintiff's testimony. *See Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ also found that plaintiff's treatment was inconsistent with her allegations of symptoms and limitations from disabling impairments. ALJ Meyers cited (AR 760, 763-765) evidence of plaintiff's naturopathic care appointments that showed notation of improvements in symptoms of physical and mental health conditions with conservative treatment such as acupuncture, dietary supplements, and changes in diet. E.g., AR 325, 362, 530-549, 613-614, 1687, 1757, 1909, 1953-1958, 1970, 2007. The Court reviews the agency's decision as a whole, rather than parsing particular paragraphs or pages without context. *Kaufmann v. Kijakazi,* 32 F.4th 843, 851 (9th Cir. 2022). There is

1    substantial evidence, and the ALJ provided clear and convincing reasons, to support the

2    ALJ's finding that plaintiff's treatment was conservative, as to physical and mental

3    health symptoms and limitations other than IBS for the entire relevant period; and for

4    IBS related symptoms and limitations for the *post-2016* portion of the relevant period.

5          Regarding plaintiff's symptoms and limitations concerning IBS, and fatigue

6    connected to IBS, the ALJ's reasons are not clear and convincing, or supported by

7    substantial evidence as to the time between the alleged onset date and the period

8    starting in early 2017. It appears that plaintiff's statements about her condition during

9    that 2013-2016 period are consistent with the medical record; her treatment for IBS,

10   while it was not surgical or traditional medicine, was constantly monitored by Dr.

11   Colombini and Dr. Going, and persistently pursued by plaintiff during that time.

12         The ALJ's decision shows a distrust of the non-traditional medical doctors'

13   assessments, and the record reflects the ALJ rejected some of plaintiff's statements

14   because she pursued the non-traditional medical treatments. AR 759 ("During the

15   relevant period, she ceased medication for GI impairments and pursued alternative

16   treatment."); AR 764 (ALJ notes that plaintiff did not see specialists for her

17   gastrointestinal conditions, and "[s]he was seeing a naturopath for her allegedly

18   disabling symptoms."); AR 767-768 (assessing the opinions of the naturopathic doctors

19   and using the prefix "Ms." Rather than the title of "Dr.", despite licensing requirements

20   under Washington law that establish these are physicians with a separate licensure-

21   qualifying process). This is not a clear and convincing reason to discount plaintiff's

22   statements. *See, Putz v. Astrue,* 371 Fed. Appx. 801, 802 - 803 (9th Cir. 2010)

23   (unpublished) (ALJ's reasoning, giving little or no weight to the opinions of a naturopath

24

25

because the doctor did not rely on traditional medicine, was not a germane reason and was not supported by substantial evidence); *Kimberly M. v. Commissioner,* No. 3:23-cv-00985-HZ, 2024 WL 1928777, at *12 (D. Oregon, May 2, 2024) ("It is not clear and convincing to discount a claimant's subjective testimony simply because the claimant follows a course of treatment that does not fully conform to conventional Western standards").

Plaintiff also argues the ALJ erred by relying on plaintiff's daily activities as a reason for discounting her statements. The ALJ pointed to instances of plaintiff being able to prepare meals and handle chores, doing well in physical therapy, housesitting for friends, gardening, driving into town, and spending time at a beach in 2018. AR 765. While these moderate activities would potentially be inconsistent with plaintiff's allegations of severe mental health conditions or musculoskeletal physical symptoms and limitations (other than IBS), they would not necessarily be inconsistent with the IBS symptoms. These activities are not of the frequency or intensity that would be demanded of plaintiff if she worked eight-hours per day and five days per week in competitive employment. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff's credibility should not be discounted for her efforts to maintain somewhat of a normal life, despite the symptoms of her conditions. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff also asserts the ALJ erred by finding that plaintiff's statements about her symptoms and limitations were inconsistent over the relevant period. See AR 765-766 (ALJ observes plaintiff made statements in 2017-2019 about fatigue and digestive health that were different from earlier reports). Yet, as plaintiff points out, the IBS and

fatigue symptoms and limitations changed over time, and therefore her statements cannot be expected to be precisely the same each time she testified, or had medical appointments. Therefore, there is not substantial evidence to support this finding by the ALJ.

### d.  Lay witness evidence

Plaintiff challenges the ALJ's assessment of several lay witness statements. Dkt. 14 at 16-17.

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). And where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694* (9th Cir. 2009). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Although plaintiff lists several lay witness statements that she argues the ALJ erred in evaluating, she only provides an argument as to the opinion of her friend, Alison Reames. Dkt. 14 at 16-17.

1       Here, the statements of Ms. Reames dated 8-7-2014 relate to plaintiff's daily

2   activities, her mental health, and echo plaintiff's own statements, pertaining to fatigue

3   and mental health issues. See AR 245-46, 1335-42. As discussed above, the ALJ

4   provided a valid reason for discounting plaintiff's testimony with respect to mental health

5   issues and physical conditions (other than IBS). Accordingly, the ALJ did not err.

6   *See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694* (9th Cir. 2009).

7           **e.  Harmless error**

8       An error that is inconsequential to the non-disability determination is harmless.

9   *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors

10  of the ALJ result in a residual functional capacity (RFC) that does not include relevant

11  work-related limitations, the RFC is deficient, and the error is not harmless. *Id; see also,*

12  *Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey*

13  *v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx.

14  715, 718 (9th Cir. 2021) (unpublished).

15      The ALJ only included one limitation in the RFC – proximity to a bathroom at

16  work -- that would pertain to Dr. Colombini's and Dr. Going's opinions about IBS

17  diagnosis and work-related limitations associated with IBS such as unpredictable,

18  frequent, explosive bowel occurrences and fatigue connected to IBS. Because the ALJ

19  did not provide a germane reason for discounting Dr. Colombini's assessment or Dr.

20  Going's assessment concerning symptoms and limitations of IBS in particular, between

21  the alleged date of onset and the early part of 2017 before there was a documented

22  showing of improvement, there is not a limitation pertaining to IBS symptoms -- other

23  than being in proximity to a bathroom. The error cannot be considered harmless. These

24

25

1    medical provider opinions – and plaintiff's statements about symptoms and limitations

2    relating to fatigue, distress, and explosiveness of the IBS symptoms -- were not properly

3    evaluated by the ALJ, nor were appropriate limitations relating to IBS included in the

4    RFC. Therefore, this case must be reversed and remanded.

5                                                CONCLUSION

6          Thus, the Court concludes the ALJ improperly determined plaintiff to be not

7    disabled. Therefore, the ALJ's decision is <u>reversed and remanded.</u> Under *Leon v.*

8    *Berryhill,* 880 F.3d 1041, 1047 (9th Cir. 2017), the Court must consider whether there

9    are gaps or ambiguities in the record. There is ambiguity in the record for the defendant

10   to determine the date when plaintiff's IBS symptoms and limitations improved, and for

11   the ALJ to present a hypothetical to a vocational expert that includes relevant limitations

12   for the period before the improvement in plaintiff's IBS symptoms and limitations

13   occurred.

14         Therefore, this case is remanded for consideration of the IBS symptoms and

15   limitations. The Commissioner may hold a new hearing and is ordered to re-evaluate

16   the opinions of Dr. Colombini and Dr. Going, and also re-evaluate the statements of

17   plaintiff regarding IBS symptoms and limitations. Plaintiff shall be offered the opportunity

18   to present any additional evidence regarding IBS symptoms and limitations for the

19   relevant period.

20         Dated this 15th day of August, 2025.

21                                                        *Theresa L. Fricke*

22                                                        Theresa L. Fricke
                                                         United States Magistrate Judge

23

24

25